Jason Barnes
2706 Benton Street
Santa Clara, CA 95051
Phone 408 987 1041

Plaintiff In Pro Per

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON BARNES,<br><br>   Creditor/<br>   Plaintiff,<br><br>  V.<br><br>ANTHONY NGUYEN,<br><br>   Debtor/<br>   Defendant. | CASE NO.<br><br>**ADVERSARY PROCEEDING &<br>COMPLAINT**<br><br>**BASED ON DEFENDANT'S FRAUDULENT OBTAINING OF LOANS FROM PLAINTIFF ANDS THEN FRAUDULENT TRANSFER OF PROPERTY BY DEFENDANT**<br><br>**NGUYEN BANKRUPTCY<br>CASE NO. 17-51644** |

**PARTIES AND JURISDICTION / VENUE**

1. Plaintiff Jason Barns (Mr. Barnes) at all times referenced herein is and was over the age of 18, and a permanent resident of Santa Clara County.

2. Jamie Macias-Nguyen at all times herein referenced is and was over the age of 18, and a permanent resident of Santa Clara County.

3. Defendant Anthony Nguyen at all times herein referenced is and was over the age of 18, and a permanent resident of Santa Clara County.

4. At all times herein, up until approximately June 1, 2017 Defendant Anthony Nguyen and Jamie Macias-Nguyen were married as husband and wife respectively, after about June 1,

-1-

2017 they were divorced.

5. At all times relevant herein Defendant Anthony Nguyen and Jamie Macias-Nguyen were the agents, partners, joint ventures and co-conspirators of the above-named entity Defendants.

6. All acts complained of herein took place within this Court's jurisdiction.

## GENERAL ALLEGATIONS REGARDING THE LOANS

7. This Adverse Action involves loans made by Mr. Barnes to Macias-Nguyen and Defendant Anthony Nguyen in late 2014 and early 2015 so that Macias-Nguyen and Defendant Anthony Nguyen could expand an on-line baking business by opening a physical pace commercial bakery.

8. On or about November 21, 2014 Mr. Barnes and Mr. Nguyen executed a Loan Agreement (hereinafter "November 21, 2015 Loan Agreement") which reflects one loan agreed upon; at the time Mr. Nguyen was married to Macias-Nguyen.

9. The November 21, 2015 Loan Agreement set forth the material terms such as the respective obligations of Mr. Barnes and Mr. Nguyen as well as the terms of the loan such as the loan amount, repayment requirements, and pledged collateral to secure the loan.

10. Mr. Barnes performed his obligations as set forth in the November 21, 2015 Loan Agreement, which included but were not limited to tendering $ 60,000.00 as a loan.

11. On or about January 16, 2015 Mr. Barnes, Mr. Nguyen with Ms. Macias-Nguyen entered into a Loan Agreement (hereinafter "January 16, 2015 Loan Agreement") reflects a second loan agreed upon.

12. The January 16, 2015 Loan Agreement set forth the material terms such as the respective obligations of Mr. Barnes, Mr. Nguyen and Ms. Macias-Nguyen as well as the terms of the loan such as the loan amount, repayment requirements, and pledged collateral to secure the loan.

13. Mr. Barnes performed his obligations as set forth in the January 16th Loan Agreement, which included but were not limited to tendering $ 75,000.00 as a loan to Macias-Nguyen and Mr. Nguyen.

14. As set forth in greater detail below, Macias-Nguyen representations as to the collateral property pledged for the loans were false and make with an intent to induced Mr. Barnes to enter into the loans.

15. As set forth in greater detail below, Defendant Anthony Nguyen made misrepresentations to induce Mr. Barnes to enter into the loans.

16. Mr. Barnes reasonably relied on the representations that turned out to be false, and based on his belief that they were true, entered agreed to and did loan a total of $ 135,000.00 to Macias-Nguyen and her husband at the time Defendant Anthony Nguyen.

17. One of those representations was that as part of the January 16, 2015 Loan Agreement, Mr. Barnes would become employed by California Croissant Bakehouse and Café, of which Macias-Nguyen was the sole proprietor.

18. The agreement to employ Mr. Barnes was referenced in the January 16, 2015 Loan Agreement as well as a written but unsigned Compensation Agreement dated January 15, 2015.

19. Moreover, the agreement to employ Mr. Barnes in exchange for the loan constitutes a bond under California Labor Code Section 400 et seq.

20. To date Mr. Nguyen and Macias-Nguyen have not employed Mr. Barnes, have not tendered the required salary payments to Mr. Barnes, have not repaid the loans made by Mr. Barnes, and have not tendered any collateral property to Mr. Barnes sufficient to satisfy their outstanding obligations.

## SUMMARY OF FACTS AS TO FRAUD AND THE BANKTRUPCY FILINGS

21. In her bankruptcy Petition Macias-Nguyen claims that the debt owed to Mr. Barnes is a business debt and not consumer related.

22. In her Bankruptcy Petition Macias-Nguyen listed Mr. Barnes as an unsecured creditor for $ 135,000.00 in principal debt.

23. In her bankruptcy Petition Macias-Nguyen seeks to exempt from an asset used to satisfy her debts the very stock she pledged to collateralize the loan I made to her and her husband in the January 16 2015 Loan Agreement.

24. In the January 16, 2015 Loan Agreement Macias-Nguyen clearly secures Mr. Barnes' loan to her by pledging her stock as collateral in the full amount of the $ 75,000.00 loan he made.

25. At the time of the January 16, 2015 Loan Agreement Macias-Nguyen represented to Mr. Barnes that she had 280 shares of the pledged stock.

26. At the time of the January 16, 2015 Loan Agreement Macias-Nguyen represented to Mr. Barnes that ever three months she was obtaining an additional 70 shares of stock that over time would accumulate and be used to collateralize the full loan.

27. Macias-Nguyen's amended tax returns for 2015 lists herself as the sole proprietor of California Croissant Bakehouse and Café.

28. Macias-Nguyen does not list California Croissant Inc. as a business in which she holds an officer position in her Petition, even though she was in fact an officer of this company within four years of filing the Petition.

29. Macias-Nguyen does not list Sonic Router Inc. aka Plumbing Tech Sewer and Repipe as a business in which she holds an officer position in her Petition, even though she was in fact an officer of this company within four years of filing the Petition.

### SUMMARY OF FACTS RELATING TO MR. BARNES' EFFORTS TO SETTLE

30. On or about December 12, 2016, Macias-Nguyen's civil attorney ("Fletcher") sent Mr. Barnes a settlement offer from on her behalf and that of Defendant Anthony Nguyen (Fletcher was jointly representing the two).

31. By this point in time, unbeknownst to Mr. Barnes, but clearly known to Defendant, Macias-Nguyen had liquidated over $100,000 in stock, the business that she started with Defendant Anthony Nguyen and that the two had identified to Mr. Barnes as the business where the money would be used was closed, and Nguyen was collecting or had collected 20 weeks of unemployment from the State of California.

32. The settlement offer was thus clearly an intentional misrepresentation of the Macias-Nguyen and Defendant Anthony Nguyen's ability to repay the debt that was owed.

33. The debt was $135,000 + $40,000 of interest on this date and Mr. Barnes had expended over $10,000.00 in attorney Fees.

34. Mr. Barnes was under the reasonable impression that the defendants were serious about settling the case.

35. On or about January 13, 2017 Mr. Barnes sent an email to the neutral mediator summarizing some of the information that came out of the early settlement ADR meeting. For example, Defendant Macias made the comments that they were making payments to Viktoria Le and that the closure of the business was not because of anything that they did.

36. On or about January 9, 2017 a settlement agreement was signed by all parties.

37. 1/25/17 Fletcher sent an email in an effort to comply with one the terms of the settlement agreement. He admits that there is no signed partnership agreement between his clients and Viktoria Le.

38. By this time, Fletcher knew about Viktoria Le's bankruptcy, the failed business, Defendant Nguyen's assertion that they paid Viktoria Le their part of the rent / lease for the property, and

-4-
JASON BARNES' ADVERSARY ACTION CASE NO.

that the landlord locked **the tenants** out of the building because the tenants were 10 months overdue on the rent.

39. On or about March 7, 2017 Fletcher forwards Mr. Barnes the asset and debt disclosure from the Defendants, pursuant to the settlement agreement; this is the first time that there evidence of bankruptcy filings by Defendant Nguyen and Defendant Macias.

40. In her Petition paper work, Defendant Macias does not list either her or now ex-husband Defendant Nguyen's cars, account balances or tax refunds as assets.

41. Defendant Macias shows that the etrade account has $37,000 of stock assets.

42. Defendant filled out the paperwork on or about January 26, 2017 and on that date the stock was selling at $147 per share which would suggest that there were approximately 250 shares of vested stock in the account.

43. The January 13, 2015 etrade statement showed 280 shares and during the two years after that was revealed, Macias received 68.75 shares in each quarter for 9 consecutive quarters which was approximately 620 shares of stock.

44. Thus, at the very least, approximately 650 shares of stock were liquidated from Jan 13, 2015 and Jan 26, 2017. With an average selling price of $150 per share, this equates to approximately $200,000 in assets that Defendant Macias received from the sale of the stock she used as collateral for the $ 75,000.00 loan that is the subject of this Action; a) failed to properly account for in her Petition paperwork and b) failed to use to pay back Mr. Barnes on the loans which are the subject of this action.

## DAMAGES

45. As a result of Defendants' conduct, Mr. Barnes has suffered a loss of the principal amount of the loans; namely the loss of $ 135,000.00, and prejudgment interest according to proof.

46. As a result of Defendants' conduct, Mr. Barnes has incurred and will be incurring attorneys' fees and case costs recoverable under Section 10 of the November 21, 2014 Agreement and Section 13 of the January 16, 2015 Agreement. (See also California Civil Code Section 1717 et seq..)

47. As a result of Defendants' conduct, Mr. Barnes has suffered and will continue to suffer loss of sleep, anxiety, loss of enjoyment of life and other emotional injuries as a result of Defendants' wrongful conduct.

48. The individual Defendants' acts and omissions rise to the level of fraud and form the basis for punitive damages, and Mr. Barnes is entitled to the same. (See, e.g. 3294 et seq.)

## FEDERAL CAUSES

## FIRST CAUSE OF ACTION – RECOVERY OF MONEY/PROPERTY

## UNDER FRBP 7001(1) including but not limited to and §§ 542 & 547

## AGAINST DEFENDANT

49. Mr. Barnes realleges and incorporates by reference each Paragraph in this Pleading as if fully set forth herein.

50. Based on the facts and the law, Mr. Barnes Defendant Nguyen's debt (a) is non-dischargeable and that said debt must be (b) paid to him totals $ 135,000.00 plus pre and post judgment interest at a rate of 10% per annum; and (c) all stock and related stock that is the subject of this Adverse Proceeding and in Ms. Macias-Nguyen's possession, custody or control must be sold must be sold and all proceeds turned over to Mr. Barnes until the debt is fully satisfied; (d) all property that Defendant Anthony Nguyen pledged as collateral be provided to Mr. Barnes..

51. WHEREFORE, Mr. Barnes requests relief as set forth herein.

## SECOND CAUSE OF ACTION DISCHARGABILITY

## UNDER FRBP 7001(6) including but not limited to and § 523(a)(2) & (4)

## AGAINST DEFENDANT

52. Mr. Barnes realleges and incorporates by reference each Paragraph in this Pleading as if fully set forth herein.

53. Based on the facts and the law, Mr. Barnes seeks a ruling from the Court that Defendant Nguyen's debt (a) is non-dischargeable and that said debt is (b) owed to him totals $ 135,000.00 plus pre and post judgment interest at a rate of 10% per annum.

54. WHEREFORE, Mr. Barnes requests relief as hereinafter set forth herein.

## THIRD CAUSE OF ACTION DECLARATORY JUDGMENT

## UNDER FRBP 7001(9)

## AGAINST DEFENDANT

55. Mr. Barnes realleges and incorporates by reference each Paragraph in this Pleading as if fully set forth herein.

56. Mr. Barnes seeks a declaratory judgment that Defendant Nguyen's debt (a) is non-dischargeable and that said debt is (b) owed to him totals $ 135,000.00 plus pre and post judgment interest at a rate of 10% per annum.

57. WHEREFORE, Mr. Barnes requests relief as hereinafter set forth herein.

## STATE CAUSES
## FIRST STATE CAUSE OF ACTION
## FRAUD - NOVEMBER 21, 2014 LOAN AGREEMENT
## AGAINST DEFENDANT

58. Mr. Barnes realleges and incorporates by reference each Paragraph above as if fully set forth herein.

59. In or about November 2014, Defendant Anthony Nguyen and Jamie Macias-Nguyen were married, and Macias-Nguyen was an officer of California croissant Inc.

60. In or about November 2014, Defendant Anthony Nguyen made the following and other misrepresentations of material fact, knowing they were false, prior parties signing the written November 21, 2014 Loan Agreement.

61. Defendant Anthony Nguyen claimed that the money loaned would be used for opening a brick and mortar store that expanded his on-line baking business, that he would be the owner of the business, called California Croissant Inc.

62. Anthony Nguyen represented to Mr. Barnes in an in person conversation that Defendant Anthony Nguyen would provide property collateral (described as commercial bakery equipment) with a value sufficient to fully secure the loan of $ 60,000.

63. Defendant Anthony Nguyen stated that he had a 25 year plumbing royalty from the sale of a plumbing business that he could and would post as collateral and by which he would be able to pay Plaintiff regular and full periodic payments later reflected in the loan documentation.

64. The truth was as follows.

65. In the cost accounting sent by debtor Nguyen to creditor Barnes, Nguyen represented that he received royalty payment of $7000 in 2014, and Defendant Nguyen showed Mr. Barnes the royalty payments in two cost accounts.

66. But Defendant Nguyen in fact received no royalty payments. (The royalty payments should show up on his tax returns as $21,000 from Oct-Dec 2014 and at $13,500 in 2015, but he has produced his tax returns and no such payments are reflected therein).

67. Defendant Anthony Nguyen had not put down any deposit to secure the Downtown San Jose location of the business to which the loan was related.

68. The commercial bakery equipment described by Defendant Anthony Nguyen did not have a value sufficient to fully secure the $ 60,000 loan from Mr. Barnes.

69. Defendant Anthony Nguyen had not filled out the lease application for Downtown San Jose

-7-

JASON BARNES' ADVERSARY ACTION CASE NO.

though he represented to Mr. Barnes that he had secured the lease.

70. Defendants were not within $ 20,000.00 of opening the store in Downtown San Jose, and were not in the process of getting permits, and had not hired an architect.

71. The equipment did and does not have a value that will secure the loan.

72. Defendant Anthony Nguyen has not produced any evidence of the plumbing royalty.

73. Mr. Barnes reasonably believed Defendant's false statements to be true, relied the truth thereof, executed the November 21, 2014 Loan Agreement and deposited a total of $ 60,000.00 into the account owned by Defendant California Croissant Inc.

74. The loan was to be repaid on an interest only basis for a period of three years.

75. Defendants have not used the money for opening a brick and mortar store that expanded Defendant Anthony Nguyen's on-line baking business and did not open a store at the Downtown San Jose location.

76. Defendants have not made the required loan payments to Mr. Barnes.

77. As a proximate cause of the individual Defendants' acts and omissions set forth above, Mr. Barnes suffered damages as set forth above.

78. WHEREFORE, Mr. Barnes requests relief as hereinafter set forth.

## SECOND STATE CAUSE OF ACTION
## FRAUD - JANUARY 16, 2015 LOAN AGREEMENT
## AGAINST DEFENDANT

79. Mr. Barnes realleges and incorporates by reference each Paragraph above as if fully set forth herein.

80. In January 2015 Defendant Anthony Nguyen failed to make the first payment reflected in the November 21, 2014 Loan Agreement.

81. As a result of the failure to make a payment, Mr. Barnes and Mr. Nguyen began having discussions regarding another possible loan.

82. In the context of those discussion, Defendants intentionally made the following and other material misrepresentations, knowing them to be false, all with the intent that Plaintiff rely on the truth of the falsities to lend Defendants money.

83. Defendant Anthony Nguyen contacted Mr. Barnes about a deal with a Guam-related project, asking Mr. Barnes to loan him additional money so that Mr. Nguyen could make $ 50,000.00.

Case: 17-51644    Doc# 27    Filed: 03/15/18    Entered: 03/15/18 16:13:18    Page 8 of 20

84. At the time the Guam-related project was discuss, Nguyen indicated that Nguyen needed to show a deposit of $ 75,000.00 in a working capital account to finalize the lease on the Downtown San Jose building.
85. Defendant Anthony Nguyen represented to Mr. Barnes in an in person conversation that Jamie Macias-Nguyen would provide property collateral with a value sufficient to over secure a $ 75,000.00 loan from Mr. Barnes.
86. That property was described as shares of stock in the publically traded company Palo Alto Networks.
87. Mr. Barnes was told by Defendant Anthony Nguyen that he could be added to the brokerage account for the stock as a lender in order to perfect his security interest.
88. Defendant Anthony Nguyen falsely promised that if Mr. Barnes went through with the loan Defendants would employ him at a salary of $40,000.00 in downtown San Jose and that as additional compensation Plaintiff would receive 5% of the sales the store generated.
89. Macias-Nguyen and Nguyen put together a written Compensation Agreement that referenced the above employment agreement terms. (The employment agreement was also referenced the employment in the January 16, 2015 Loan Agreement page 2 Section 7 under *Additional Clauses*.)
90. Defendant Anthony Nguyen claimed that Mr. Barnes would receive a partial refund of the security deposit from the property manager (in the amount of $ 6,000.00) if Defendant Anthony Nguyen could show the property manager that his account contained $ 75,000.00.
91. Mr. Barnes reasonably relied on the truth of Defendants' false statements, and based on that reliance executed the written loan documents and lent Defendants the money.
92. Mr. Barnes deposited said money into a bank account owned by Jamie Macias-Nguyen.
93. Subsequent to entering into the January 16, 2015 Loan Agreement and Defendants' failure to make any additional loan payments, Mr. Barnes discovered the following.
94. Defendants had not had any material discussions with the Downton San Jose building owner, that Defendants had paid no money to the building owner,
95. Defendants had no more right than anyone else to the lease of the building and that the landlord did not hinge any right on Defendants showing him a $ 75,000.00 working capital account.
96. The shares of stock actually owned by Jamie Macias-Nguyen and vested in her name were insufficient to secure the $ 75,000.00 loan.

97. Moreover, the shares of stock were restricted and not available for trading
98. Moreover, Jamie Macias-Nguyen could not in fact add Mr. Barnes' name to the brokerage account as a secured party.
99. Macias-Nguyen began liquidating the stock pledged as collateral for the loan and did not use the resulting money to pay down Mr. Barnes' loan to them.
100. Within a month and a half of Mr. Barnes filing his complaint, on or about April 29, 2015 Macias-Nguyen started liquidating the funds that Plaintiff loaned them; Macias-Nguyen did so by paying money to a business other than the one they previously represented Mr. Barnes' loaned monies would be put toward.
101. Instead of opening California Croissants Inc. or California Croissants Bakehouse & Cafe LLC, Defendant Anthony Nguyen and Macias-Nguyen appear to have gone into business in some fashion with a partner, Viktoria Le.
102. Defendants have not made the required loan payments to Mr. Barnes.
103. As a proximate cause of the individual Defendants' acts and omissions set forth above, Mr. Barnes suffered damages as set forth above. (*See Macedo v. Bosio* (2001) 86 Cal. App. 4th 1044, 1051.)
104. WHEREFORE, Mr. Barnes requests relief as hereinafter set forth .

### THIRD STATE CAUSE OF ACTION
### FRAUDULENT BREACH OF CONTRACT
### NOVEMBER 21, 2014 LOAN AGREEMENT
### AGAINST DEFENDANT

105. Mr. Barnes realleges and incorporates by reference each Paragraph above as if fully set forth herein.
106. This cause of action is pled against Defendants Anthony Nguyen and Does 1 through 20.
107. The November 21, 2014 Loan Agreement formed a binding contract.
108. The essential terms of the contract include that:
109. Mr. Barnes agreed to loan Defendants $ 60,000.00 to be repaid in monthly interest only payments over three years.
110. The first of the payments was due on January 1, 2015 and the entire unpaid balance was and is due at the end of 36 months.
111. Defendants agreed to provide adequate property collateral in the form of commercial baking equipment to secure the loan such that the loan would be fully secured.

-10-
JASON BARNES ADVERSARY ACTION CASE NO.

112. Mr. Barnes performed his obligations under the contract, including lending the $ 60,000.00.
113. To the extent Mr. Barnes failed to perform any obligation set forth in the contract, non-performance was and is prevented and/or excused from performing.
114. Defendants did not perform their obligations under the contract and thus breached the contract in its material terms.
115. More specifically, Defendants failed to make the payment due.
116. Defendants have also failed to provide property with a value adequate to secure the loan.
117. Defendants' breaches were and are not excused.
118. As a proximate cause of Defendants' breach, Mr. Barnes suffered damages as set forth above.
119. WHEREFORE, Mr. Barnes requests relief as hereinafter set forth.

### FOURTH STATE CAUSE OF ACTION
### FRAUDULENT BREACH OF CONTRACT
### JANUARY 16, 2015 LOAN AGREEMENT
### AGAINST DEFENDANT

120. Mr. Barnes realleges and incorporates by reference each Paragraph above as if fully set forth herein.
121. This cause of action is pled against Defendants Anthony Nguyen, Jamie Macias-Nguyen and Does 1 through 20.
122. The January 16, 2015 Loan Agreement formed a binding contract.
123. The essential terms of the contract were and are as follows.
124. Mr. Barnes agreed to loan Defendants $ 75,000.00, to be repaid in monthly interest only payments over two months.
125. The first payment was due February 1, 2015 and the entire unpaid balance was due on or before March 16, 2015.
126. Defendants agreed to provide property collateral, in the form of the stock previously referenced, to secure the loan such that the loan would be over secured.
127. Mr. Barnes performed his obligations under the contract, including lending the $ 75,000.00.
128. To the extent Mr. Barnes failed to perform any obligation set forth in the contract, non-performance was and is prevented and/or excused from performing.
129. Defendants did not perform their obligations under the contract and thus breached the contract in its material terms.

-11-
JASON BARNES ADVERSARY ACTION CASE NO.

130. More specifically, Defendants have failed to make the payments due.
131. Defendants have also failed to provide the property with a value adequate to cover and secure the loan.
132. As of December 2015, Defendants claim that they cannot provide the property sufficient to secure the loan.
133. The Defendants' breaches were and are not excused.
134. As a proximate cause of the individual Defendants' breaches, Mr. Barnes suffered damages as set forth above.
135. WHEREFORE, Mr. Barnes requests relief as set forth herein.

## FIFTH STATE CAUSE OF ACTION
## COMMON COUNT
## AGAINST DEFENDANT

136. Mr. Barnes realleges and incorporates by reference each Paragraph above as if fully set forth herein.
137. This cause of action is pled against Defendants Anthony Nguyen, Jamie Macias-Nguyen and Does 1 through 20.
138. Defendants' became indebted to plaintiff within the last four years because an account was stated in writing by and between Mr. Barnes and Defendants in which it was agreed that Defendants would be indebted to Mr. Barnes.
139. The amount of $ 135,000.00 the reasonable amount due and unpaid despite Mr. Barnes' demand for the same, plus prejudgment interest according to proof.
140. As to the underlying $ 135,000.00, Defendant Anthony Nguyen owed $ 135,000.00 and Jamie Macias-Nguyen owes $ 75,000.00.
141. WHEREFORE, Mr. Barnes requests relief as hereinafter set forth.

## SIXTH STATE CAUSE OF ACTION
## COMMON COUNT
## AGAINST DEFENDANT

142. Mr. Barnes realleges and incorporates by reference each Paragraph above as if fully set forth herein.
143. This cause of action is pled against Defendants Anthony Nguyen, Jamie Macias-Nguyen and Does 1 through 20.
144. Defendants' became indebted to plaintiff within the last four years for money lent by Mr.

-12-

Barnes to Defendants at Defendants' request.

145. The amount of $135,000.00 the reasonable amount due and unpaid despite Mr. Barnes' demand for the same, plus prejudgment interest according to proof.

146. As to the underlying $135,000.00, Defendant Anthony Nguyen owed $135,000.00 and Jamie Macias-Nguyen owes $75,000.00.

147. WHEREFORE, Mr. Barnes requests relief as hereinafter set forth.

### STEVENTH STATE CAUSE OF ACTION
### BREACH OF EMPLOYMENT CONTRACT
### AGAINST DEFENDANT

148. Mr. Barnes realleges and incorporates by reference each Paragraph above as if fully set forth herein.

149. This cause of action is pled against Defendants Anthony Nguyen, Jamie Macias-Nguyen, California Croissant Bakehouse and Café, and Does 1 through 20.

150. In connection with the January 16, 2015 Loan Agreement and as reflected in the January 15, 2015 Compensation Agreement (reflecting oral promises made by the parties), Mr. Barnes entered into an employment contract with Defendants.

151. In failing to employ and pay Plaintiff employment compensation Defendants breached the employment contract.

152. WHEREFORE, Mr. Barnes requests relief as hereinafter set forth.

### EIGHTH STATE CAUSE OF ACTION
### VIOLATION OF LABOR CODE SECTION 400 ET SEQ.
### AGAINST DEFENDANT

153. Mr. Barnes realleges and incorporates by reference each Paragraph above as if fully set forth herein.

154. This Cause of Action is brought pursuant to Labor Code Section 400 et seq. and Labor Code Section 2896 et seq., to which Plaintiff and Defendants are subject.

155. In or about January 2015 Mr. Barnes and Defendants entered into an employment agreement in which Defendants accepted a bond regulated by Labor Code Section 400 et seq.

156. That agreement was reflected in the January 16, 2015 Loan Agreement and a written January 15, 2015 Compensation Agreement.

157. The money paid by Plaintiff Barnes constituted property as defined by Labor Code Section 408. (Labor Code Section 408; People v. Vandersee (1956) 139 Cal.App.2d 388.)

158. Defendants failed to provide Plaintiff with appropriate security equal to the value of the money Plaintiff paid to them.

159. Defendants failed to employ Mr. Barnes, failed to pay his salary, and failed to repay the $75,000.00 he lent.

160. Defendants thus violated Defendants violated Labor Code Section 400 et seq.

161. Defendants are thus subject to, inter alia, a fine of not less than fifty dollars ($50) and not exceeding one thousand dollars ($1,000), or imprisonment for not exceeding six months, or both. (See, e.g. Labor Code Section 408.)

162. WHEREFORE, Mr. Barnes requests relief as hereinafter set forth.

## NINTH STATE CAUSE OF ACTION
## CONVERSION
## AGAINST DEFENDANT

163. Mr. Barnes realleges and incorporates by reference each Paragraph above as if fully set forth herein.

164. Mr. Barnes is informed and believes that the individual Defendants have converted the moneys lent by Mr. Barnes to persons, intents and entity Defendants other than for which the money was lent.

165. To allow any Defendant to retain the money will allow the Defendants to subvert justice and constitutes conversion of the Defendants at Mr. Barnes' unjust expense.

166. WHEREFORE, Mr. Barnes requests relief as set forth herein.

## TENTH STATE CAUSE OF ACTION UNJUST ENRICHMENT
## AGAINST DEFENDANT

167. Plaintiff incorporates by reference and realleges all previous paragraphs as though fully set forth herein.

168. Plaintiff had and has a legally cognizable interest in the money lent to the respective Defendants relating to the November 21, 2014 and January 16, 2015 loans.

169. Defendants have been unjustly enriched by Plaintiff's loans, and Plaintiff has not received the

-14-
JASON BARNES' ADVERSARY ACTION CASE NO.
Case: 17-51644   Doc# 27   Filed: 03/15/18   Entered: 03/15/18 16:13:18   Page 14 of 20

1 | promises security interests, loan payments, or repayment of the full loan principles.

170. As a proximate result of the actions hereinabove alleged, Defendants have been unjustly enriched.

171. WHEREFORE, Mr. Barnes requests relief as set forth herein.

# ELEVENTH STATE CAUSE OF ACTION
## Uniform Fraudulent Transfer Act
## AGAINST DEFENDANT

172. Mr. Barnes realleges and incorporates by reference each Paragraph above as if fully set forth herein.

173. Where a creditor has a claim against a debtor's assets, whether by judgment or otherwise, that debtor may not convey or otherwise dispose of such property in an effort, or to the effect, to deprive the creditor of her legitimate right to recover such assets as may satisfy the obligation due the creditor.

174. A fraudulent conveyance is a transfer by a debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim. *Yaesu Electronics Corp. v. Tamura* (1994) 28 Cal. App. 4th 8, 13.

175. **Uniform Fraudulent Transfer Act -** Cal. Civ. Code § 3439 et seq. embodies the current regime of California law – known as the Uniform Fraudulent Transfer Act. The UFTA prohibits debtors from transferring or placing property beyond the reach of their creditors when that property should be available for the satisfaction of the creditors' legitimate claims. A transfer under the UFTA is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset ..., and includes payment of money, release, lease, and creation of a lien or other encumbrance." Cal. Civ. Code § 3439.01(i).

176. The UFTA provides remedies only to those creditors to whom a debt, as defined in § 3439.01, is owed. Whether the creditor's claim arose before or after the debtor made the

transfer or incurred the obligation, **four (4) distinct grounds** for finding a fraudulent transfer exist:

177. (i) Cal. Civ. Code § 3439.04(a)(1) designates as fraudulent any transfer made or obligation incurred by a debtor with actual intent (determination of "actual intent" depends on the assessment of eleven factors, *see infra* Actual Fraudulent Intent for § 3439.04(a)(1) Determined by § 3439.04(b)) to hinder, delay, or defraud any creditor of the debtor;

178. (ii) Cal. Civ. Code § 3439.04(a)(2)(A) designates as fraudulent (and presumes fraudulent intent) a transfer made or obligation incurred without receiving reasonably equivalent value where the debtor was engaged or about to engage in a business or transaction with unreasonably small remaining assets in relation to the business or transaction;

179. (iii) Cal. Civ. Code § 3439.04(a)(2)(B) designates as fraudulent (and presumes fraudulent intent) a transfer made or obligation incurred without receiving reasonably equivalent value where the debtor intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as the debts became due;

180. (iv) Cal. Civ. Code § 3439.05 designates as fraudulent (and presumes fraudulent intent) a transfer made or obligation incurred without receiving reasonably equivalent value where the debtor was insolvent at the time of making the transfer or incurring the obligation or became insolvent as a result of the transfer or obligation.

181. It is not necessary that the transferor acted maliciously or with a desire to harm his creditors. *See Economy Refining & Service Co. v. Royal Nat'l Bank* (1971) 20 Cal. App. 3d 434, 441. The *Economy Refining & Service Co*. Court held that it was the debtor's intent to make the transfer, rather than some evil intent to harm the creditor, which sufficed for finding intent to defraud. *Id*. ("actual intent to defraud consisted of the intent [. . .] to remove the assets and to make impossible the collection of appellant's judgment"). Furthermore, in the words of one court:

182. Mere intent to delay or defraud is not sufficient; injury to the creditor must be shown affirmatively. [. . .] It cannot be said that a creditor has been injured unless the transfer puts

-16-
JASON BARNES ADVERSARY ACTION CASE NO.

beyond [her] reach property [she] otherwise would be able to subject to the payment of [her] debt. *Mehrtash v. Mehrtash* (2001) 93 Cal. App. 4th 75, 80.

183. **Actual Fraudulent Intent for § 3439.04(a)(1) Determined by § 3439.04(b)** - the "actual intent" referred to in § 3439.04(a)(1) is determined upon consideration of eleven (11) factors set out in § 3439.04(b). *See also Filip v. Bucurenciu* (2005) 129 Cal. App. 4th 825, 834 (factors are not mathematical formula, but to provide guidance to court, not compel finding one way or other). Cal. Civ. Code § 3439.04(b) states:

184. In determining actual intent under paragraph (1) of subdivision (a), consideration may be given, among other factors, to any or all of the following: (1) Whether the transfer or obligation was to an insider. (2) Whether the debtor retained possession or control of the property transferred after the transfer. (3) Whether the transfer or obligation was disclosed or concealed.

> (4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit. (5) Whether the transfer was of substantially all the debtor's assets. (6) Whether the debtor absconded. (7) Whether the debtor removed or concealed assets. (8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred. (9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred. (10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred. (11) Whether the debtor transferred the essential assets of the business to a lien holder who transferred the assets to an insider of the debtor.

185. Finding actual intent is a question of fact to be established by the trial court with the burden of proof on the party asserting the fraudulent intent and upon a showing by a preponderance of the evidence. *E.g. People ex rel. Allstate Insurance Co. v. Muhyeldin* (Cal. App. 2d Dist. 2003) 112 Cal. App. 4th 604, 611.

186. **Constructive Fraudulent Intent Where Actual Intent Irrelevant** - There are two (2) forms of constructive fraud grounding creditor claims which arose either before or after the transfer under the UFTA. The first, Cal. Civ. Code § 3439.04(a)(2)(A), provides that a transfer is fraudulent if the debtor did not receive reasonably equivalent consideration and "[w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction." The second, Cal. Civ. Code § 3439(a)(2)(B), provides that a transfer is fraudulent if the debtor did not receive reasonably equivalent consideration and "[i]ntended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due."

187. In a related manner, Cal. Civ. Code § 3439.05 provides that a transfer is fraudulent as to an existing creditor if the debtor does not receive reasonably equivalent value and "was insolvent at that time or . . . became insolvent as a result of the transfer . . . ." Cal. Civ. Code § 3439.02 defines insolvency and § 3439.02(c) allows a presumption of insolvency where a debtor is generally not paying his debts as they become due. In other words, this section acts to prevent a debtor from transferring his last assets at unreasonably low value, thereby depriving the creditor of an existing claim on the assets, if the debtor was insolvent or became insolvent because of the transfer.

188. Macias-Nguyen during all relevant times was and is subject to the UFTA, and Mr. Barnes is protected by the UFTA.

189. Through her acts and omissions as set forth herein Macias-Nguyen violated the UFTA and proximately caused Mr. Barnes to suffer damages.

190. Wherefore, Mr. Barnes requests the relief as set forth herein:

REQUEST FOR RELIEF

IN ADDITION TO THE REQUESTS MADE IN EACH SPECIFIC FEDERAL CAUSE OF ACTION, Mr. Barnes requests judgment against Defendants, and each of them, as follows:

191. **Remedies Available under UFTA.**

-18-

192. Under the UFTA provides several remedies pursuant to Cal. Civ. Code § 3439.07 (Creditor's Remedies). Cal. Civ. Code § 3439.07 (Creditor's Remedies):

193. (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim.

194. (2) An attachment or other provisional remedy against the asset transferred or its proceeds in accordance with the procedures described in Title 6.5 (commencing with Section 481.010) of Part 2 of the Code of Civil Procedure.

195. (3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure, the following:

196. (A) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or its proceeds.

197. (B) Appointment of a receiver to take charge of the asset transferred or its proceeds.

198. (C) Any other relief the circumstances may require.

199. (b) an attachment of all the assets transferred by Macias-Nguyen or its proceeds if the remedy of attachment is available in the action under applicable law and the property is subject to attachment in the hands of the transferee under applicable law.

200. (d) A creditor who is an assignee of a general assignment for the benefit of creditors, as defined in Section 493.010 of the Code of Civil Procedure, may exercise any and all of the rights and remedies specified in this section if they are available to any one or more creditors of the assignor who are beneficiaries of the assignment, and, in that event (1) only to the extent the rights or remedies are so available and (2) only for the benefit of those creditors whose rights are asserted by the assignee.

201. Although some transfers are voidable under § 3439.07, Cal. Civ. Code § 3439.08(a) embodies the good faith exception to the voidability remedy. Where a debtor transferred assets with actual fraudulent intent, pursuant to § 3439.04(a)(1), § 3439.08(a) provides that

the transfer is not voidable against a person who took for reasonably equivalent value and on good faith, or against subsequent transferees. The transferee's good faith or knowledge of the debtor's fraudulent intent may be inferred where the transferee had notice of facts and circumstances sufficient to induce a prudent person to inquire into the transferee's purpose. *See Boness v. Richardson Mineral Springs* (1956) 141 Cal. App. 2d 251, 261.

202. To the extent the transaction is voidable pursuant to § 3439.04(a)(1), a judgment to recover from one other than a good faith transferee the asset or the value of the asset under § 3439.08(b). However, where the transferee is of good faith, that transferee may retain his/her interest or rights to the extent of value given to the debtor for the asset.

203. Such transfers are so tempting and so typical that the effort to retrieve the assets is well known in the Courts and the simple rule that is applied (the closer to the judgment and the less the consideration paid by the transferee, the easier a case to prove) can often result in successful collections from a judgment debtor once thought without assets.

## OTHER REMEDIES

204. For Mr. Barnes to be made whole by way of payment of the full amount owed on each Loan referenced herein, totaling $ 135,000.00 as well as interest according to proof.

    1. For compensatory damages according to proof;
    2. For exemplary damages according to proof;
    3. For general damages, including, without limitation, for mental and emotional distress according to proof (on the applicable causes of action as plead above);
    5. For an award of interest, including prejudgment and postjudgment interest at the legal rate;
    6. For an award of attorneys' fees incurred in this suit;
    7. For costs of suit incurred;
    8. For such other and further relief as the Court deems appropriate.

Dated March 15, 2018

_____  3/15/18
Plaintiff In Pro Per Jason Barnes

-20-
JASON BARNES' ADVERSARY ACTION CASE NO.